UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| STEVEN R. SCHOFF, JR., | ) |
| Plaintiff | ) |
| v. | ) 2:16-cv-00609-NT |
| JOSEPH FITZPATRICK, et al., | ) |
| Defendants | ) |

**RECOMMENDED DECISION AFTER SCREENING COMPLAINT
PURSUANT TO 28 U.S.C. §§ 1915(e), 1915A**

In this action, Plaintiff Steven Schoff, Jr., an inmate in the custody of the Maine Department of Corrections and assigned to the Maine Correctional Center, alleges Defendants illegally seized, opened, and reviewed his "privileged legal mail," and retaliated against him based on the information contained in his mail, in violation of his constitutional rights to free speech and due process.

Plaintiff filed an application to proceed in forma pauperis (ECF No. 2), which application the Court granted. (ECF No. 3.) In accordance with the in forma pauperis statute, a preliminary review of Plaintiff's complaint is appropriate. 28 U.S.C. § 1915(e)(2). Additionally, Plaintiff's complaint is subject to screening "before docketing, if feasible or … as soon as practicable after docketing," because he is "a prisoner seek[ing] redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a).

Following a review of Plaintiff's complaint, I recommend the Court dismiss Plaintiff's claims except for Plaintiff's legal mail claim against Defendant Landry and Plaintiff's retaliation claim against Defendants Luke Monahan and Harvey Bailey.

## STANDARD OF REVIEW

When a party is proceeding in forma pauperis, "the court shall dismiss the case at any time if the court determines," inter alia, that the action is "frivolous or malicious" or "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B). "Dismissals [under § 1915] are often made sua sponte prior to the issuance of process, so as to spare prospective defendants the inconvenience and expense of answering such complaints." *Neitzke v. Williams*, 490 U.S. 319, 324 (1989).

In addition to the review contemplated by § 1915, Plaintiff's complaint is subject to screening under the Prison Litigation Reform Act because Plaintiff currently is incarcerated and seeks redress from governmental entities and officers. *See* 28 U.S.C. § 1915A(a), (c). The § 1915A screening requires courts to "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim …; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

When considering whether a complaint states a claim for which relief may be granted, courts must assume the truth of all well-plead facts and give the plaintiff the benefit of all reasonable inferences therefrom. *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). A complaint fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "The relevant question ... in assessing plausibility is not whether the complaint makes any particular factual allegations but, rather, whether 'the complaint warrant[s] dismissal because it failed *in toto* to render plaintiffs' entitlement to relief plausible.'" *Rodríguez–Reyes v. Molina–Rodríguez,* 711 F.3d 49, 55 (1st Cir. 2013) (quoting *Twombly,* 550 U.S. at 569 n.

14). Although a pro se plaintiff's complaint is subject to "less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the complaint may not consist entirely of "conclusory allegations that merely parrot the relevant legal standard," *Young v. Wells Fargo, N.A.*, 717 F.3d 224, 231 (1st Cir. 2013). *See also Ferranti v. Moran*, 618 F.2d 888, 890 (1st Cir. 1980) (explaining that the liberal standard applied to the pleadings of pro se plaintiffs "is not to say that pro se plaintiffs are not required to plead basic facts sufficient to state a claim").

## FACTUAL BACKGROUND

According to Plaintiff, on February 2, 2016, Plaintiff was assaulted by another inmate. The inmate who assaulted Plaintiff has been indicted and is currently being prosecuted in state court for attempted murder. (Complaint ¶ 15.) Before the incident, Plaintiff complained that Defendant Penny Bailey, the Unit Manager at the Maine Correctional Center, had released "sensitive information about [Plaintiff] to his eventual assailant and/or his assailant's associates." (*Id.* ¶ 16.) Plaintiff also complained to Defendant Penny Bailey and other corrections staff members that he "was being harassed, bullied and threatened by his eventual assailant and associates." (*Id. ¶ 17*.)

Defendant Verrier, an investigator employed by the Department of Corrections, investigated the crime committed against Plaintiff. Plaintiff refused to cooperate with the investigation so long as Defendant Penny Bailey was involved.[1] (*Id.* ¶ 19.) On February 8, 2016, Defendant Verrier asked Plaintiff to write a detailed account of the event and mail it to the Cumberland County District Attorney. (*Id.* ¶ 22.) On February 13, 2016, Plaintiff sent a letter, marked "LEGAL MAIL," to the district attorney and expressed reluctance to relate the details for

---

[1] Plaintiff asserts that on April 3, 2014, almost two years prior to the incident, Ms. Bailey placed Plaintiff in the "punitive level system" based on Plaintiff's "mental health symptomology." (*Id.* ¶ 21.)

fear of reprisal by Defendant Penny Bailey. (*Id.* ¶¶ 23, 26.) Plaintiff asserts the letter "was seized, opened and read outside plaintiff's presence, and was disseminated on the prison's 'CORIS' (Correctional Information System) computer service, by unidentified IPS [Inner Perimeter Security] officers." (*Id.* ¶ 24.)

On February 17, 2016, Plaintiff sent another letter, marked "LEGAL MAIL," to the district attorney in which he discussed the history behind the attack. (*Id.* ¶¶ 27, 29.) In his second letter, Plaintiff provided a narrative in which he admitted trafficking in marijuana and Suboxone within the Maine Correctional Center in 2013. (*Id.* ¶ 30.) Plaintiff alleges the letter was "seized, opened and read" just as his earlier letter had been. (*Id.* ¶ 28.)

Based on Plaintiff's letter detailing his involvement with drugs within the Maine Correctional center, Defendants Monahan and Harvey Bailey issued Plaintiff a disciplinary ticket, and scheduled a hearing on the matter for February 23, 2016. (*Id.* ¶¶ 30 – 31). Plaintiff requested a continuance of the hearing because he remained on medical quarantine due to symptoms related to his head injury and subsequent surgery. (*Id.* ¶ 31.) Defendant Captain Welch denied the request and held the hearing as scheduled. (*Id.*)

Prior to the hearing, Plaintiff requested certain prisoner witnesses be called to the hearing to testify. (*Id.* ¶ 32.) Defendant Welch denied the request because the witnesses either had been transferred to other prisons or had been released from custody. (*Id.*) When Plaintiff received a notice of the disciplinary hearing, Plaintiff presented Defendant Welch with a copy of the Department's mail policy, which prohibited the opening and reading of a prisoner's legal mail. (*Id.* ¶ 33.) Defendant Welch replied that the issue had "been run all the way up the ladder," and that Defendant Warden Landry "says the AG's office told him it was all legal." (*Id.*)

Plaintiff attended the hearing on February 23. At the start, Defendant Welch informed Plaintiff that he would hear the Plaintiff's defense but he "had his 'marching orders.'" (*Id.* ¶ 34.) Defendant Welch found Plaintiff guilty of the offense, and imposed a sanction of 30 days in disciplinary segregation, 30 days loss of accumulated good time credit, and a $100 fine. (*Id.* ¶ 36.) On appeal, Defendant Landry confirmed the guilty finding. (*Id.* ¶ 39.) According to Plaintiff, none of the other individuals whom he identified in his letter regarding drug trafficking was charged with a disciplinary violation. (*Id.* ¶ 37.)

On February 24, 2016, Plaintiff filed a grievance regarding the review of his mail. Defendant Deputy Warden Brown reported the grievance was unresolved, and that the "letter was opened because it would have been sent back by the DA to the investigator." (*Id*. ¶ 40.) Plaintiff then filed the unresolved grievance with Defendant Shipman, the Grievance Review Officer. (*Id*.) Plaintiff also asked Defendant Breton, the Deputy Commissioner of Corrections, to expunge the disciplinary matter from his record based on the "obvious policy violations" regarding his mail. (*Id*. ¶ 42.)

Plaintiff asserts Defendant Shipman responded to his grievance as follows: "Policy 21.01/21.2, Procedure D.9 and D.10, Prisoner Mail, require you to be present when your legal mail is opened and/or read. You were not present when this mail was opened and read. However, your letter was opened and read in this case because it would have been sent back by the District Attorney to the investigator. Therefore, there was no harm done. I cannot grant the relief you are asking for. Staff has been cautioned to follow the policy in the future. An appeal form is enclosed." (*Id.* ¶ 45.)

Plaintiff subsequently filed an appeal, and asked for the disciplinary action to be expunged. (*Id.* ¶ 47.) Plaintiff contends Defendant Shipman "blocked" his appeal, and wrote: "It's apparent

you're attempting to appeal/expunge discipline, which is not allowed by this process. You may not appeal a dismissal." (*Id.* ¶ 48.) Plaintiff wrote to Defendants Welch and Landry requesting a new disciplinary hearing or an appeal, but did not receive a written response. (*Id.* ¶ 52.)

## DISCUSSION

To state a claim within this Court's jurisdiction, Plaintiff must allege facts from which a plausible inference arises that one or more Defendants violated one or more of Plaintiff's federal rights. In this case, proceeding under 42 U.S.C. § 1983, Plaintiff alleges Defendants violated his First Amendment rights when they opened and reviewed his legal mail; Plaintiff also asserts Defendants retaliated against him based on some of the information included in his letters. Plaintiff further contends Defendants violated his due process rights in the conduct of the disciplinary hearing.

**A.     Legal mail**

"[A] prisoner's right to the free flow of incoming and outgoing mail is protected by the First Amendment." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003). However, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston,* 334 U.S. 266, 285 (1948). "The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives – including deterrence of crime, rehabilitation of prisoners, and institutional security." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).

Certain legal mail is protected from review by prison administrators. Prisoners have a right to communicate in confidence with their counsel. When confidential attorney–client communication is conducted by mail, prison administrators may inspect the mail for contraband,

but the content of the privileged communication is generally preserved by opening properly identified legal mail in the presence of the prisoner without reviewing the content of the communication. *Wolff v. McDonnell*, 418 U.S. 539, 576 – 77 (1974); *Am. Civil Liberties Union Fund of Mich. v. Livingston Cty.*, 796 F.3d 636, 643 (6th Cir. 2015), *cert. denied*, 136 S. Ct. 1246, 194 L. Ed. 2d 184 (2016). Not all mail to or from a party who performs a "legal" function, such as a district attorney, is subject to the attorney–client privilege;[2] consequently the review of the content of such mail does not ordinarily jeopardize a right to confidential communication. Nevertheless, prison administrators may by policy afford special protection for a broader category of legal mail, such as for mail that is appropriately labeled as privileged legal mail and addressed to (or from) an appropriate legal entity. *See*, *e.g.*, *Jenkins v. Huntley*, 235 F. App'x 374, 376 (7th Cir. 2007) (affirming summary dismissal of claim based on opening and inspection of "legal mail" from state attorney's office and from attorney discipline commission where sending organizations had not identified the mail as privileged).[3] The question is whether a failure to honor such a policy offends the Constitution, either by interfering with access to governmental remedies or by unreasonably restricting the right to send mail.

   1.   ***Access to court***

In *Lewis v. Casey*, 518 U.S. 343 (1996), the Supreme Court reviewed an access to courts case arising from the alleged inadequacy of prison law library and legal assistance services. The Court held that a constitutional claim based on a prisoner's right to access the courts requires a showing of actual injury to that right. *Id.* at 351. *See also Oliver v. Fauver,* 118 F.3d 175, 178

---

[2] In the context of communications with criminal defense counsel, the prisoner's Sixth Amendment rights are also implicated. Plaintiff's correspondence with the District Attorney does not raise similar concern.

[3] Courts have held that correspondence with attorneys general and prosecutors will often implicate the right of prisoners to access the courts or otherwise petition the government for redress of grievances, and have appropriately expressed concern that opening and reviewing the content of such mail could "chill" access to justice. *See Muhammad v. Pitcher*, 35 F.3d 1081, 1083 (6th Cir. 1994) (collecting cases).

(3d Cir. 1997) (holding that prisoner suffered no actual injury based on alleged interference with his outgoing legal mail to the court, where his mail arrived at the court and the court adjudicated his claim).

In this case, even if the Court were to consider Plaintiff's letters to the district attorney to be mail that implicates Plaintiff's First Amendment right of access to the courts, Plaintiff has alleged no harm to his right of access to the courts. In fact, according to Plaintiff, the state has obtained an indictment against the perpetrator of the assault, and the state is prosecuting the perpetrator for attempted murder. Because Plaintiff has not alleged a harm to his right of access to the courts, Plaintiff has not alleged an actionable "access" claim based on Defendants' seizure and opening of his mail.[4]

### b. *Right to send mail*

The question remains whether Plaintiff has alleged a plausible First Amendment claim based exclusively on the opening of mail addressed to a governmental agency and labeled "legal mail." In *Boswell v. Mayer*, 169 F.3d 384 (6th Cir. 1999), the Sixth Circuit reviewed the dismissal of a prisoner's claim that officials violated his constitutional rights by opening mail sent to him by the Michigan Attorney General. While the court concluded that dismissal was appropriate because the attorney general had not labeled the mail as privileged mail, the court separately analyzed the claim as both an access to court claim and a claim based on the "First Amendment right to receive mail." *Id.* at 388.

---

[4] To the extent Plaintiff attempts to assert an independent claim based solely on the seizure of his mail, Plaintiff's claim fails. The United States Supreme Court has held that prisoners have no reasonable expectation of privacy with respect to searches and seizures of their effects. *Hudson v. Palmer*, 468 U.S. 517, 526 (1984); *see also id.* at 527 – 28 ("A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order."). The Supreme Court also has held that the seizure and use at trial of incriminating letters voluntarily written by a prisoner and obtained "under the practices and discipline of the prison" is competent evidence of guilt and does not offend the Fourth Amendment. *Stroud v. United States*, 251 U.S. 15, 21 – 22 (1919). Consequently, the Fourth Amendment is not implicated by Plaintiff's allegations.

8

The First Circuit's assessment of claims arising out of the right to send mail has been governed by the Supreme Court's decision in *Procunier v. Martinez*, 416 U.S. 396, 412 – 13 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989). *See Stow v. Grimaldi*, 993 F.2d 1002 (1st Cir. 1993) (considering a policy calling for inspection/censorship of outgoing mail, but not involving outgoing legal mail). In *Martinez*, the Supreme Court held that outgoing prisoner mail may be censored if it furthers "an important or substantial governmental interest unrelated to the suppression of expression" and the burden imposed is "no greater than is necessary or essential to the protection of the particular governmental interest involved." 416 U.S. at 412 – 13. In *Thornburgh*, the Court held that censorship of incoming mail is subject to a lower, reasonableness standard. 490 U.S. at 413. Both cases addressed prison regulations that censored, i.e., prohibited, certain communications based on content.[5] *Thornburgh*, 490 U.S. 404 – 405 (censorship of incoming mail deemed "detrimental to the security, good order, or discipline of the institution"); *Martinez*, 416 U.S. at 399 (censorship of outgoing letters that "unduly complain," "magnify grievances," or "express inflammatory political, racial, religious or other views or beliefs"). The Court explained in *Thornburgh* that the language in *Martinez* imposing a higher standard for censorship of outgoing mail was the product the Court's "recognition that the regulated activity centrally at issue in that case-outgoing personal correspondence from prisoners-did not, by its very nature, pose a serious threat to prison order and security." *Thornburgh*, 490 U.S. at 411. In other words, *Martinez* reflected that prison administrators generally do not have an institutional interest in the consequence of outgoing speech activity, and, therefore, censorship of outgoing communications is less likely to be sustained. *Id.* at 409 – 10. However, where an interest in internal prison administration is evident, prison regulation that burdens a constitutional

---

[5] In *Stow*, the First Circuit "assume[d] without deciding that the *inspection* of plaintiff's mail constitutes *censorship*." 993 F.2d at 1003 n.2 (emphasis in original).

right need only be "generally necessary" to a legitimate penological interest. *Id.* at 409 – 412 (reconciling *Martinez* with *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

Whether the circumstances in this case are in fact sufficient to generate a constitutional concern is uncertain. Given that Plaintiff has alleged a claim based on prison officials' review of Plaintiff's outgoing mail to a district attorney on a matter about which the prison officials were aware, Plaintiff has asserted a plausible claim upon which he could recover. While Plaintiff has not directly identified the individuals who accessed the mail, he has alleged that the warden, Defendant Landry, consulted with the Attorney General's office about the issue. (Complaint ¶ 33, ECF No. 1.) Whether the consultation occurred before or after the opening of the mail is unclear. Viewed most favorably to Plaintiff, the allegation could suggest Defendant Landry was involved in the decision to open and review the mail. Plaintiff's legal mail claim thus can proceed against Defendant Landry.

**B.     Retaliation**

To establish a claim of First Amendment retaliation, an inmate must allege (1) that the inmate engaged in conduct that is protected by the First Amendment; (2) that a defendant took adverse action against the inmate because of the inmate's protected conduct; and (3) that the adverse action would deter an inmate of ordinary firmness from exercising his or her First Amendment rights. *Hannon v. Beard,* 645 F.3d 45, 48 (1st Cir. 2011); *Davis v. Goord,* 320 F.3d 346, 352 (2d Cir. 2003); *Thaddeus–X v. Blatter,* 175 F.3d 378, 398 (6th Cir. 1999).

Plaintiff contends that his speech rights have been chilled because he was charged with a drug trafficking violation by Defendants based on the content of his communication with the district attorney. Here, Plaintiff alleges he informed the District Attorney, in the context of a report requested by a prison investigator, of his belief that Defendant Penny Bailey failed to respond

properly to his complaints of mistreatment by the perpetrator of the assault against him, and that as a result, Defendant Monahan, Defendant Penny Bailey's colleague, and Defendant Harvey Bailey, Defendant Penny Bailey's spouse, charged him, and only him, with drug trafficking. Based on the alleged facts, Plaintiff has asserted a plausible retaliation claim. In particular, Plaintiff has asserted an actionable retaliation claim against Defendants Monahan and Harvey Bailey.

**C.     Due Process**

The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving a person of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The analysis of a due process claim includes two issues. The Court first considers "whether there exists a liberty or property interest of which a person has been deprived," and if so, it then considers "whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011). "[T]he processes required by the Clause with respect to the termination of a protected interest will vary depending upon the importance attached to the interest and the particular circumstances under which the deprivation may occur." *Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 320 (1985).

Unless Plaintiff has alleged facts to support a claim that the discipline deprived him of an interest protected by the Due Process Clause, his due process claim cannot proceed, regardless of whether Defendants violated or ignored specific provisions found in the Department of Corrections Prisoner Discipline Policy (ECF No. 25-5). *Swarthout*, 562 U.S. at 219; *Sandin v. Conner*, 515 U.S. 472, 483 – 84 (1995); *Surprenant v. Rivas*, 424 F.3d 5, 16 – 17 (1st Cir. 2005).

Here, Plaintiff alleges the loss of accrued good time credit and a $100 fine. The sanctions are sufficient to implicate interests protected by due process. [6] *Sandin*, 515 U.S. at 487 (duration

---

[6] Plaintiff's other alleged sanctions, specifically the 30-day disciplinary segregation and loss of vocational opportunity, do not involve interests protected by the Due Process Clause. *Sandin*, 515 U.S. at 486 (holding that 30-day period of

of sentence); *Coombs v. Welch*, No. 15-1776 (1st Cir. May 9, 2016) (citing *Reynolds v. Wagner*, 128 F.3d 166, 179 (3d Cir. 1997) (monetary fine)). However, a section 1983 action is not actionable "if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005) (discussing the holding of *Edwards v. Balisok*, 520 U.S. 641, 646 (1997)). Plaintiff, therefore, must pursue his claim regarding loss of accrued good time credit in the context of "federal habeas corpus (or appropriate state relief)." *Id.* at 78. Plaintiff could maintain a section 1983 action after he obtained state relief or habeas relief. *DeWitt v. Wall*, 121 F. App'x 398, 399 (1st Cir. 2004) (unpublished, per curiam opinion).[7] In short, Plaintiff has not asserted an actionable due process claim.

## CONCLUSION

Based on the foregoing analysis, after a review pursuant to 28 U.S.C. § 1915(e)(2), I recommend the Court dismiss Plaintiff's claims except for Plaintiff's legal mail claim against Defendant Landry, and Plaintiff's retaliation claim against Defendants Luke Monahan and Harvey Bailey.

---

discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest); *Dominique v. Weld*, 73 F.3d 1156, 1160 (1st Cir. 1996) (applying *Sandin* to uphold dismissal of prisoner's claim that his four-year participation in a work release program had given rise to a liberty interest in the program and citing, inter alia, *Bulger v. United States Bureau of Prisons,* 65 F.3d 48, 49 – 50 (5th Cir. 1995) (inmate terminated from a prison job permitting the automatic accrual of good-time credits lacked a protected liberty interest in the job, despite apparent violation of a state regulation)).

[7] If this matter was before the Court on a habeas petition, rather than a § 1983 claim, the Due Process Clause would have entitled Plaintiff to (1) advance notice of the disciplinary hearing, (2) the opportunity to call material witnesses and present documentary evidence where doing so would not jeopardize institutional safety or correctional goals, (3) and a written statement of the reasons for the decision and the supporting evidence. *Hill*, 472 U.S. at 454 (citing *Wolff v. McDonnell,* 418 U.S. 539, 563 – 66 (1974)). Plaintiff complains that he could not call witnesses because the incident occurred three years earlier and the witnesses were no longer in the facility. He also suggests that he should have received a continuance because of his medical condition. Plaintiff, however, has failed to allege that any particular witness's testimony would have been relevant to his defense or would have aided his defense. "A violation of the right to call witnesses will be considered harmless unless there is evidence that the testimony could have aided the prisoner's defense." *Wilson v. McBride,* No. 03-2370, 93 F. App'x 994, 996 (7th Cir. 2004) (citing *Piggie v. Cotton,* 344 F.3d 674, 677 (7th Cir. 2003)); *see also Sanders v. Nevada*, No. 2:13-CV-00375-APG, 2013 WL 3944410, at *2, 2013 U.S. Dist. LEXIS 101977, at *6 – 8 (D. Nev. July 22, 2013).

**NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

<u>/s/ John C. Nivison</u>
U.S. Magistrate Judge

Dated this 19th day of January, 2017.