UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| STEVEN R. SCHOFF, JR. | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 2:16-cv-00609-NT |
| | ) | |
| JOSEPH FITZPATRICK, et als., | ) | |
| | ) | |
| | ) | |
| Defendants | ) | |

**MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, defendants hereby move for summary judgment.  As grounds for this motion, defendants state:

1.  Any interference by these defendants in plaintiff's ability to access the courts did not affect an underlying constitutional claim.

2.  On the facts established in the record, defendants Landry, Penny Bailey and Brown were not involved in or aware of the interception and opening of plaintiff's legal mail.

3.  On the facts established in the record, defendants Monahan and Harvey Bailey did not retaliate against plaintiff for exercising his rights under the First Amendment.

4.  Plaintiff's claim for compensatory damages for emotional and mental distress is barred by his failure to allege any physical injury as the result of defendants' actions.

## MEMORANDUM IN SUPPORT OF MOTION

### Facts and Procedural Background

Steven Schoff, a prisoner incarcerated at the Maine Correctional Center (MCC), brings this complaint against Warden Scott Landry, Deputy Warden Glean Brown, Unit Managers Penny Bailey and Luke Monahan, Detective David Verrier and Captain Harvey Bailey.  Schoff's claims arise out of the interception and reading of an outgoing letter that Schoff mailed to the Cumberland County District Attorney.

On February 2, 2016, Schoff was assaulted by another prisoner, Dale Gardner.  Verrier, MCC's criminal investigator, began an investigation of the incident for possible criminal prosecution of the assailant.  As part of his investigation to determine the motive behind the assault, Verrier had recordings of telephone conversations of Schoff and Gardner reviewed.  In one conversation a couple of weeks before the assault, Schoff asked his girlfriend, Misty Bowen if she had looked up "that guy."  Bowen said she had.  Schoff asked her to print out what she found and send it to him, explaining that "the guy" had caused him a lot of problems and he wanted to repay the favor.

An officer detailed to search Schoff's effects after the assault gave Verrier a folded-up piece of paper that was discovered among Schoff's things.  The paper appeared to be a print-out of a newspaper article from the internet.  The article stated that a Dale Gardner, 16 years old, had been arrested in Pennsylvania in 1988 and admitted to sexually assaulting and murdering an 11-year-old boy.  Verrier compared the information in the article with information in prisoner Dale Gardner's DOC file.  Prisoner Dale Gardner was born in 1968 and would have been in his early 20's in 1988.  In addition, his crime was committed in New Jersey and involved the death of an

adult male.  Verrier concluded that the Dale Gardner referenced in the news article was not the same person as prisoner Dale Gardner at MCC.

Verrier interviewed Misty Bowen, who told him that Schoff had asked her to look up information about Dale Gardner on the internet.  Bowen confirmed that the internet article found among Schoff's effects was the article she sent to him.

Verrier met with Schoff to question him about the assault and the news article. Defendant Penny Bailey was present during the interview.  Schoff admitted that he had confronted Gardner with the information in the article and also shared that information with several other prisoners at MCC.  Because Schoff was reluctant to discuss the events leading up to the assault with Penny Bailey present, Verrier asked Schoff to prepare a report about the assault and submit it to Verrier. He did not direct Schoff to send the report to the district attorney.

As a result of his interview with Misty Bowen and Schoff, Verrier directed officers of the Inner Perimeter Security (IPS) team to conduct surveillance of Schoff's mail.  On February 17, the IPS team intercepted a letter from Schoff to District Attorney Stephanie Anderson.  The letter was accompanied by the detailed report that Verrier had requested.  Neither Landry, Brown, nor Penny Bailey approved the interception of Schoff's letter and report or had any knowledge of Verrier's action until after it occurred.

In the report, Schoff admitted to participating with prisoner Mark Miville in drug trafficking at MCC several years before.  Verrier gave a copy of Schoff's report to Deputy Warden Brown for possible disciplinary action.

On March 24, 2016, Verrier met with Deputy District Attorney Jennifer Ackerman to present the results of his investigation into the assault.  Included in the material he presented was Schoff's letter to the district attorney and Schoff's narrative report.

3

If the office of the district attorney receives a statement from a crime victim and they have not yet opened a file in the matter, they will send the statement to the officer in charge of the investigation.  In the Dale Gardner case, the district attorney did not open its file until March 28, 2016, several days after Verrier presented the case to DDA Ackerman.  If they had received Schoff's statement in February, they would have forwarded it to Verrier, the investigating officer, to keep in his file.

It was clear to DDA Ackerman that Schoff believed that prisoner Miville had been involved in the attack on him.  Although she investigated that possibility, Ms. Ackerman did not feel there was sufficient evidence to seek an indictment against Miville, and she met with Schoff on two occasions to explain that to him.  The evidence against Gardner included video showing him striking Schoff on the head with a hammer as well as two eyewitnesses who saw Gardner strike Schoff.  Because of this evidence, any additional information provided by Schoff in his statement did not make a significant difference in the district attorney's decision to seek an indictment against Gardner.

In his report to the district attorney, Schoff recounted that he participated with Miville in trafficking drugs at MCC in 2013.  Based on Schoff's admission, defendant Brown directed defendant Monahan, who was the manager of Schoff's assigned housing unit, to prepare a disciplinary incident report charging Schoff with the infraction of trafficking.  Because Monahan questioned whether the information in Schoff's report to the district attorney could be used in a disciplinary proceeding, he and Brown consulted with the attorney general's office before proceeding with the disciplinary complaint.

Monahan's only involvement in the disciplinary process was to write up the initial Disciplinary Incident Report.  Pursuant to the disciplinary policy, the report must be reviewed by

a supervisor to determine if it clearly sets forth the incident and the disciplinary charge.  The

shift supervisor must approve the report if it is clearly written and he agrees that a formal

resolution of the charge is necessary.  In this case, defendant Harvey Bailey was the supervisor

on duty at the time Monahan presented the report, and he found that the report was clearly

written and that the offense was sufficiently serious to warrant a formal discipline.  This was

Harvey Bailey's only involvement in the disciplinary process.

After his initial review of the complaint, the magistrate judge recommended that the case

be allowed to proceed on two claims.  The first was a legal mail claim against Scott Landry,

based upon the implication that Landry was involved in the decision to open and review Schoff's

mail to the district attorney.  *Recommended Decision, p. 10.*  The second was a First Amendment

claim of retaliation against Monahan and Harvey Bailey, based on Schoff's allegation that they

charged him with a disciplinary offense in retaliation for Schoff's complaints to the district

attorney about the way Penny Bailey handled complaints by Schoff about his assailant.  *Id., p 11.*

Schoff moved to amend the complaint with additional allegations concerning defendants'

alleged interference with his mail to the district attorney's office regarding the assault.  The court

granted Schoff's motion.  In the same order, the court reviewed the magistrate's recommended

decision and affirmed that the case could proceed on the two claims identified by the magistrate.

In addition, the court allowed the case to proceed on a Fourth Amendment claim for

unauthorized seizure of Schoff's legal mail against unidentified corrections officers and a "right

of access to the courts" claim against Verrier, Penny Bailey, Brown and unidentified corrections

officers.  *Order Granting Motion to Amend and Affirming in Part Recommended Decision of the*

*Magistrate Judge, p. 6.*

In this motion, defendants address the claims against the named defendants of interference with Schoff's legal mail and right of access to the courts and retaliation.

## Argument

**1.  Any interference by these defendants in plaintiff's ability to access the courts did not affect an underlying constitutional claim and is not actionable.**

In *Lewis v. Casey*, 518 U.S. 343, 349 (1996), the Supreme Court emphasized that, to succeed on a claim that the policies or actions of prison officials were impeding a prisoner's constitutional right of access to the courts, the prisoner must show an actual injury resulting from the action or policy.  The court elaborated on this holding in *Christopher v. Harbury*, 536 U.S. 403 (2002).  There, it recognized that access-to-court claims may involve frustration of the right to bring some future action due to the operation of a governmental policy or practice, or the loss of an existing meritorious claim due to some specific action.  *Id.* at 414.  The court re-emphasized the "actual injury" requirement of *Lewis*, stating, "Whether an access claim turns on a litigating opportunity yet to be gained or an opportunity already lost, the very point of recognizing any access claim is to provide some effective  vindication for a separate and distinct right to seek judicial relief for some wrong."  *Id.,* 414-415.  Thus, to succeed in an access claim, the plaintiff must identify a non-frivolous, underlying claim that has been frustrated or lost by the defendant's interference with plaintiff's access to the court.  *Id.*  The underlying cause of action and the lost remedy must be identified by allegations in the complaint.  *Id., 416.  C.f.*, *Goodrich v. Ouelette*, 2010 WL 3516608 (D. Me.) (requiring an "actual, tangible interference" with a court proceeding;  *Bass v. Singletary*, 143 F. 3d 1442, 1445 (11th Cir. 1998) (limiting access-to-courts claims to appeals from convictions, habeas petitions, and civil suits.)

"Although a prisoner has a right to be present when his legal mail is opened, an isolated incident of mail tampering is usually insufficient to establish a constitutional violation." *Davis v. Goord*, 320 F. 3d 346, 351 (2d Cir. 2003). A court will generally require a showing of invidious intent or actual harm where incidents of tampering are few. *Id.*

"[A] private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another." *Linda R. S. v. Richard D.,* 410 U.S. 614, 619 (1973). Thus, the failure of prison officials to bring a criminal charge on behalf of an inmate who has been assaulted does not rise to the level of a constitutional violation. *Reynolds v. Donate*, 2007 WL 320754, *2 (M.D. Pa.); *Lacy v. Berge*, 921 F. Supp. 600, 610 (E.D. Wis. 1996).

In this case, even assuming that Schoff is able to show an improper interference with his legal mail, the record establishes that he has not suffered the loss of a cognizable legal claim as a result. The gravamen of Schoff's claim is that, by intercepting his letter to the district attorney, prison officials interfered with his ability to communicate freely and openly with the official who was prosecuting his assailant. The record shows, however, that defendant Verrier's diversion of Schoff's letter resulted at most in a delay of several weeks in the prosecutor's receipt of the letter (between the time the letter was mailed and the time that Verrier turned over a copy of his investigative file, including the letter, to DDA Ackerman). Moreover, that delay was inevitable, as the district attorney's office, had it received the letter when it was mailed, would merely have sent the letter to Verrier, the officer investigating the crime, for inclusion in his file.

Schoff's letter and the affidavit of DDA Ackerman make clear that Schoff's primary interest was that prisoner Miville also be prosecuted for his alleged involvement in the assault. Schoff had no legal right to compel the prosecution of Miville, and, in the prosecutor's judgment, there was not sufficient evidence to seek his indictment. Moreover, Ackerman discussed this

decision personally with Schoff on two occasions; this fact undercuts Schoff's assertion that there was some sort of continuing interference by prison officials with his ability to communicate with the prosecutor.

Because Schoff cannot demonstrate that any legal harm resulted from Verrier's interception of Schoff's letter to the district attorney, his claim of interference with his constitutional right of access to the courts must fail.


**2.  On the facts established in the record, defendants Landry, Penny Bailey and Brown were not involved in or aware of the interception and opening of plaintiff's legal mail.**

In his complaint, plaintiff alleges generally that all defendants participated in the interception and opening of his legal mail.  *See, Complaint, ¶ 61.*  These conclusory allegations are not factually developed elsewhere in the pleading.

The affidavits of Scott Landry, Glean Brown and Penny Bailey establish that they did not direct and were not aware of the diversion of Schoff's letter to the district attorney.  On this evidence, it is axiomatic that these individuals cannot be held liable for the alleged interference with Schoff's access to the court.


**3.  On the facts established in the record, defendants Monahan and Harvey Bailey did not retaliate against plaintiff for exercising his rights under the First Amendment.**

In order to proceed on a retaliation claim, a plaintiff must allege facts sufficient to show that he engaged in protected activity, that the state took an adverse action against him, and that

there was a causal link between the former and the latter.  *Hannon v. Beard*, 645 F. 3d 45, 48 (1st

Cir. 2011).

> Simply adding an allegation that [prison officials] acted out of retaliatory motives
> is easy to do, but it is not enough.  It is, in fact, because of the ease with which a
> retaliation claim may be fabricated that courts approach prisoners' claims of
> retaliation with skepticism and particular care.

*Dolberry v. Levine*, 567 F. Supp. 2d 413, 420-421 (W.D.N.Y. 2008) (citations and quotations

omitted.) In the context of a retaliation claim, "virtually any action taken against a prisoner by a

prison official – even one not rising to the level of a constitutional violation – can be

characterized as a constitutionally proscribed act."  *Id.; c.f., Hannon v. Beard, supra* (courts must

insist that retaliation claims are "bound up in facts, not in the gossamer strands of speculation

and surmise.")

In his complaint, Schoff details some of the problems he perceived with his former unit

manager, Penny Bailey, e.g., that she ignored his complaints about being bullied and harassed by

his eventual assailant and that, two years before the incident, she placed him in the "punitive

level system."  *See, Complaint, ¶¶ 17, 20-21.*  Without further factual predicate, Schoff alleges

in conclusory fashion that Monahan and Harvey Bailey retaliated against him by charging him

with the disciplinary infraction of trafficking based on the admissions in Schoff's report.

*Complaint, ¶ 63.*  There is no specific allegation of the protected act or acts that triggered the

alleged retaliation.

As established by his affidavit, Monahan's only involvement in the disciplinary

proceeding was to write up the incident report at the direction of Deputy Warden Brown after he

was shown Schoff's statements admitting to his involvement in selling drugs in the prison.

Harvey Bailey's connection with the disciplinary write-up was even more tenuous:  he merely

reviewed the complaint and performed the ministerial act of signing off on it so it could proceed

to a formal hearing.  There is no support in the record for the conclusion that these acts were taken in retaliation of Schoff exercising his constitutional rights.

**4.  Plaintiff's claim for compensatory damages for emotional and mental distress is barred by his failure to allege any physical injury as the result of defendants' actions.**

The Prison Litigation Reform Act states: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). This section of the PLRA has been interpreted to include claims for compensatory damages brought under 42 U.S.C. § 1983 for emotional and mental injury arising from violations of rights secured by the First and Fourteenth Amendments.  *Royal v. Kautzky,* 375 F. 3d 720, 723 (8th Cir. 2004) (discussing split of authority and observing that majority of courts interpret §1997e(e) as applying to all federal civil claims, including constitutional claims, and not excepting First Amendment claims.)  This interpretation has been adopted in the District of Maine.  *Sacred Feather v. Merrill*, 2008 WL 2510102, *6 (D. Me. 2008) (recommended decision, Kravchuk, M.J.) (absent definitive ruling by First Circuit, court will continue to follow holding in *Calhoun v. DeTella*, 319 F. 3d 936, 940-941 (7th Cir. 2003) that compensatory damages for emotional injury stemming from violation of First or Fourteenth Amendment rights are barred by § 1997e(e) absent showing of physical injury.)

Schoff has not alleged that he sustained any physical injury as the result of defendants' actions.  Because of this, he is not entitled to recover any compensatory damages for his claimed mental and emotional distress.

## **Conclusion**

For the reasons stated above, defendants request that the court enter judgment in their favor.

September 26, 2017                    ___/s/  James E. Fortin___
                                     James E. Fortin
                                     Assistant Attorney General
                                     James.Fortin@maine.gov

Office of the Attorney General
Six State House Station
Augusta, ME 04333
626-8800

Certificate of Service

The undersigned hereby certifies that he electronically filed the above document with the Clerk of Court using the CM/ECF system, which will serve a copy on all counsel of record, and that he mailed a copy, postage paid, to the following:

Steven R. Schoff, Jr.
Maine Correctional Center
17 Mallison Falls Road
Windham, ME 04062

September 26, 2017                    /s/ James E. Fortin
                                     James E. Fortin
                                     Assistant Attorney General