UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| STEVEN R. SCHOFF, JR., | ) | |
|---|---|---|
| Plaintiff | ) ) ) | |
| | ) | 2:16-cv-00609-NT |
| v. | ) ) | |
| JOSEPH FITZPATRICK, et al., | ) ) | |
| Defendants | ) | |

**RECOMMENDED DECISION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND ORDER ON PLAINTIFF'S REQUEST FOR Rule 56(d) RELIEF AND MOTION TO STRIKE**

In this action, Plaintiff Steven Schoff, Jr., an inmate in the custody of the Maine Department of Corrections, alleges Defendants illegally seized, opened, and reviewed his "privileged legal mail," deprived him access to the courts, and retaliated against him based on the information contained in his mail.

The matter is before the Court on Defendants' Motion for Summary Judgment (ECF No. 26), Plaintiff's request for relief under Federal Rule of Civil Procedure 56(d) (ECF No. 39), and Plaintiff's Motion to Strike the Affidavit of Jennifer Ackerman (ECF No. 42). Through the summary judgment motion, certain defendants seek judgment on all claims, and some defendants ask the Court to enter judgment in their favor on all claims except Plaintiff's claim regarding the unlawful seizure and review of his outgoing legal mail.

1

Plaintiff requests that the Court deny the motion in part based on the unavailability of facts needed to overcome the motion. Plaintiff also asks the Court to strike an affidavit filed by Defendants.[1]

Following a review of the parties' submissions and the record, I deny Plaintiff's motion to strike and Plaintiff's request for Rule 56(d) relief, and recommend the Court grant in part and deny in part Defendant's motion for summary judgment.

## BACKGROUND FACTS

The facts are derived from Defendants' statement of material facts (DSMF, ECF No. 27), affidavits cited in support of the statement (ECF Nos. 28, 49-2), Plaintiff's statement of disputed factual issues (PSDF, ECF No. 40), Plaintiff's affidavit in opposition to the summary judgment motion (Schoff Aff., ECF No. 40), and Plaintiff's complaint signed under penalty of perjury (Compl., ECF No. 1).[2]

---

[1] Defendants omitted the affidavit of Jennifer Ackerman when they filed their motion, but filed the affidavit with their reply.

[2] In support of their motion for summary judgment, Defendants filed a statement of material facts setting forth the background facts upon which their motion is based. Local Rule 56 requires that factual assertions in support of or in opposition to a motion for summary judgment be set forth in a separate statement of material facts. D. Me. Loc. R. 56(a), (b), (f). Defendants have complied with the Rule. Plaintiff has not filed an opposing statement of material facts as required under Local Rule 56(c), but has filed his own statement of facts. Because Plaintiff has not filed an opposing statement, and because Defendants' statements are supported by record citations, the factual assertions set forth in Defendants' statement are deemed admitted. *See* D. Me. Loc. R. 56(f). However, a court "may not automatically grant a motion for summary judgment simply because the opposing party failed to comply with a local rule requiring a response within a certain number of days." *NEPSK, Inc. v. Town of Houlton*, 283 F.3d 1, 7 – 8 (1st Cir. 2002). Instead, a court must assess whether the movant has shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In the context of summary judgment, this Court has observed that a prisoner's nonconforming summary judgment submission should be reviewed by the Court and that the facts set forth in a verified complaint or prisoner affidavit should be considered. *Clarke v. Blais*, 473 F. Supp. 2d 124, 128 (D. Me. 2007). In this case, therefore, the summary judgment record consists of the Local Rule 56 record and Plaintiff's sworn

On February 2, 2016, Plaintiff, a prisoner at the Maine Correctional Center (MCC), was assaulted by another prisoner, Dale Gardner. (DSMF ¶ 1.) Defendant David Verrier, MCC's criminal investigator, conducted an investigation into the incident. (*Id.* ¶ 2.) As part of his investigation, Defendant Verrier reviewed recordings of Plaintiff's phone calls and learned that Plaintiff had obtained a news article from a person outside the facility regarding a criminal act committed by a person Plaintiff believed might be Mr. Gardner. (*Id.* ¶¶ 3 – 5.) On February 8, 2016, Defendant Verrier interviewed the person who sent the article to Plaintiff. (*Id.* ¶ 5.)

On the same day, Defendant Verrier, accompanied by Defendant Penny Bailey, Unit Manager, met with Plaintiff to question him about the assault. (*Id.* ¶ 8.) Because Plaintiff was reluctant to discuss the events leading up to the assault with Defendant P. Bailey present, Defendant Verrier asked Plaintiff for a written statement regarding his history of conflict with Mr. Gardner. According to Defendant Verrier, he did not ask Plaintiff to send a statement to the district attorney, but rather asked Plaintiff to give him the statement. (*Id.* ¶ 9.) According to Plaintiff, Defendant Verrier told him to send his statement to the district attorney. (PSDF ¶¶ 1, 2.)[3]

As a result of his interviews on February 8, Defendant Verrier directed MCC's Inner Perimeter Security (IPS) team to conduct surveillance of Plaintiff's mail. (DSMF ¶ 11.) On February 17, the IPS team intercepted a letter from Plaintiff to District Attorney

---

statements of record. Notably, although Plaintiff filed an amended complaint (ECF No. 9), unlike with Plaintiff's complaint, Plaintiff's amended complaint was not signed under penalty of perjury.

[3] Plaintiff asserts that there should be an audiotape of the meeting and that there is an outstanding discovery request for a copy of the recording. (PSDF ¶ 4.)

3

Stephanie Anderson.[4] The letter contained the statement Defendant Verrier asked Plaintiff to prepare. (*Id.* ¶ 12.) Defendant Verrier reviewed the letter and evidently maintained custody of the letter until he met with the Deputy District Attorney Jennifer Ackerman approximately one month later.

In the letter, Plaintiff described the circumstances under which he met Marc Miville, an individual he believed shared responsibility for the assault by Mr. Gardner. The letter included information of Plaintiff's involvement with Mr. Miville in the trafficking of drugs at the MCC in 2013. (DSMF ¶ 14.) Defendant Verrier gave a copy of the letter to Defendant Glean Brown, Deputy Warden of MCC. (DSMF ¶ 14.)

On February 19, 2016, Defendant Luke Monahan, Unit Manager, was asked to attend a meeting with Defendants Brown and Verrier. At the meeting, Defendant Monahan learned of Plaintiff's letter to the district attorney regarding the drug trafficking activity, and was told the letter had been intercepted by the IPS team. (*Id.* ¶ 21.) Defendant Brown suggested that based on the letter, Plaintiff should receive a disciplinary write-up for trafficking. (*Id.* ¶ 22.) Defendant Monahan expressed concern as to whether they could use the information in the letter because it was included in Plaintiff's outgoing letter to the district attorney. (*Id.*) Defendants consulted an assistant attorney general, and were advised they could use the information in the letter for a disciplinary write-up for trafficking. (*Id.*)

---

[4] According to the allegations in Plaintiff's verified complaint, Plaintiff sent two letters to the District Attorney marked "LEGAL MAIL," one on February 13, 2016, and another on February 17, 2016. (Compl. ¶¶ 23, 26, 27, 29.)

Defendant Brown then directed Defendant Monahan to prepare the disciplinary incident report. (*Id.*)[5]

On February 19, 2016, while Defendant Harvey Bailey was filling in as the shift supervisor at MCC, Defendant Monahan submitted to him for review and approval a disciplinary incident report regarding Plaintiff. (*Id.* ¶ 23.) Under the relevant discipline policy, the staff person who prepares the disciplinary report must submit it to a supervisor within 72 hours of the incident; the shift supervisor must review the report to determine if the report clearly sets forth the incident and the disciplinary charge; and the shift supervisor must approve the report if the supervisor determines that a formal resolution of the charge is necessary. (*Id.* ¶ 24.) Defendant H. Bailey reviewed Defendant Monahan's report and approved the charge. (*Id.* ¶ 25.)

In March 2016, Defendant Verrier met with Deputy District Attorney Ackerman, who eventually became the prosecuting attorney on the assault charge against Mr. Gardner. (*Id.* ¶ 15.) At the meeting, Defendant Verrier provided the letter that Plaintiff had attempted to mail to the district attorney. (*Id.* ¶¶ 16 – 17.) Following the meeting, the District Attorney's Office opened a file on Mr. Gardner. (*Id.* ¶ 18.)[6] According to Deputy District Attorney Ackerman, if her office had received the letter before a member of the

---

[5] Plaintiff asserts that he "has never admitted that he participated in drug trafficking at MCC, or at any time." (DSDF ¶ 12.) According to his affidavit, Plaintiff agreed, under duress, to send other prisoners to Mr. Miville, but never actually did so. (Schoff Aff. ¶ 8.) Plaintiff also asserts that, if the content of his letter was enough to find him guilty of a disciplinary infraction, the letter should have supported a similar infraction against Mr. Miville, yet prison administrators never charged Mr. Miville. (*Id.* ¶ 9.)

[6] Defendants assert that Defendant Verrier and Deputy District Attorney Ackerman met on March 24, 2016, and that Deputy District Attorney Ackerman did not open the file until "several days later," on March 28, 2016. (DSMF ¶¶ 16, 18.) In her affidavit, Deputy District Attorney Ackerman states that she met with Defendant Verrier and opened the file on March 28, 2016. (Ackerman Aff. ¶ 3.)

office met with Defendant Verrier, because the office did not have an open file on Mr. Gardner at that time, the office would have forwarded the letter to Defendant Verrier for his investigative file. (*Id.* ¶ 18; Ackerman Aff. ¶ 5.) After investigating the matter, the District Attorney's Office determined there was insufficient evidence to charge Mr. Miville with assault; Deputy District Attorney Ackerman explained the decision to Plaintiff. (DSMF ¶ 19; Ackerman Aff. ¶ 6.) According to Deputy District Attorney Ackerman, Plaintiff's letter did not make a significant difference in the decision to prosecute Mr. Gardner because the District Attorney's Office obtained statements from two witnesses, and a copy of a video recording that showed Mr. Gardner striking Plaintiff with a hammer. (DSMF ¶ 20; Ackerman Aff. ¶ 7.)[7]

## DISCUSSION

### A. Plaintiff's Motion to Strike

Plaintiff contends the Court must strike Deputy District Attorney Ackerman's affidavit because he believes her assertion that she would have sent his letter to Defendant Verrier is not credible given that Plaintiff wrote in the letter that Defendant Verrier was "botching" the investigation. (Motion to Strike ¶ 3.) Plaintiff otherwise maintains that

---

[7] Plaintiff states that Defendants failed to respond timely to requests for admissions he served on Defendants, and he asserts that the facts he asked Defendants to admit should be deemed admitted. (Matters Deemed Admitted, ECF No. 41.) Defendants contend that Defendants Landry and Brown were the only defendants who received requests for admissions, and that Defendants Landry and Brown responded. Plaintiff has the burden to introduce the record necessary to overcome a properly filed and supported motion for summary judgment. *Lawton v. State Mut. Life Assur. Co. of Am.*, 101 F.3d 218, 223 (1st Cir. 1996) ("[W]here, as here, a Rule 56 motion targets an issue on which the nonmoving party must carry the devoir of persuasion[,] … the nonmovant must 'produce specific facts, in suitable evidentiary form,' sufficient to limn a trialworthy issue." (quoting *Morris v. Gov't Dev. Bank of P.R.*, 27 F.3d 746, 748 (1st Cir. 1994)). For purposes of the summary judgment record, the Court will not deem the requests admitted because Plaintiff has not provided the Court with a copy of the requests for admissions, and the record is otherwise insufficient to establish that Defendants failed to respond to requests for admissions served upon them.

Deputy District Attorney Ackerman's assertions regarding what would have happened if the District Attorney's Office would have received the letter when Plaintiff mailed it are not relevant.

Federal Rule of Civil Procedure 12(f) authorizes a court to strike "from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Motions to strike, however, are "disfavored in practice, and not calculated readily to invoke the court's discretion." *Boreri v. Fiat S.p.A.*, 763 F.2d 17, 23 (1st Cir. 1985). In the summary judgment context, in particular, a separate motion to strike a statement of fact is not allowed. *See* D. Me. Loc. R. 56(e).

In this case, the challenged affidavit is not redundant, impertinent, or scandalous. Plaintiff has had the opportunity to respond to the factual assertions contained in the affidavit. The Court can assess the materiality of the affidavit and any other alleged deficiencies with the affidavit in its analysis of the motion for summary judgment. Accordingly, Plaintiff's motion to strike is denied.

**B.     Plaintiff's Request for Rule 56(d) Relief**

As part of his response to Defendants' motion for summary judgment, Plaintiff asserts in conclusory fashion that "facts essential to justify opposition are unavailable." (Response at 1, ECF No. 39.)

When the nonmoving party at summary judgment believes the party has not had access to facts to respond to a motion for summary judgment, the party may ask the court to defer ruling on, or deny, the summary judgment motion until the nonmoving party obtains further discovery. Fed. R. Civ. P. 56(d). To obtain the relief provided by the Rule,

7

the nonmoving party must show "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." *Id.* The First Circuit has described the necessary showing, or proffer, and the standard of review, as follows:

> [T]he proffer should be authoritative; it should be advanced in a timely manner; and it should explain why the party is unable currently to adduce the facts essential to opposing summary judgment." If the reason the party cannot "adduce the facts essential to opposing summary judgment" is incomplete discovery, the party's explanation (i.e., the third requirement) should: (i) "show good cause for the failure to have discovered the facts sooner"; (ii) "set forth a plausible basis for believing that specific facts ... probably exist"; and (iii) "indicate how the emergent facts ... will influence the outcome of the pending summary judgment motion." Thus, in a case involving incomplete discovery, the Rule 56(d) proffer requirements can be categorized as: "authoritativeness, timeliness, good cause, utility, and materiality." "[T]hese requirements are not inflexible and .... one or more of the requirements may be relaxed, or even excused, to address the exigencies of a given case." When all the requirements are satisfied, "a strong presumption arises in favor of relief.

*In re PHC*, *Inc. S'holder Litig.*, 762 F.3d 138, 143 – 44 (1st Cir. 2014) (citations omitted) (quoting *Resolution Trust Corp. v. N. Bridge Assocs.*, *Inc.*, 22 F.3d 1198, 1203 (1st Cir. 1994)).

The discovery period closed on December 22, 2017. While Defendants filed their motion for summary judgment on September 26, 2017, three months before the close of the discovery, the Court granted two extensions to Plaintiff to respond to the motion, such that his response to the motion was due on December 29, 2017, after the close of the discovery period. (Orders, ECF Nos. 32, 35.) Plaintiff did not cite the inability to obtain discovery necessary to respond to the motion for summary judgment in either of his requests for more time to respond. (Motions, ECF Nos. 31, 33.) Instead, Plaintiff was concerned about his limited access to MCC's law library. (ECF No. 33.)

Plaintiff has had more than sufficient time to conduct discovery in this matter. The Court is not persuaded that additional discovery is necessary for Plaintiff to respond to the summary judgment motions. In fact, Plaintiff argued in opposition to Defendants' substantive arguments (Response, ECF No. 39), and filed statement of disputed factual issues, with a supporting affidavit. (ECF No. 40.) Furthermore, Plaintiff has not identified the nature of the discovery he believes is necessary and how the discovery would influence the result of the motion for summary judgment. Plaintiff's request for Rule 56(d) relief, therefore, is denied.

C.   **Defendants' Motion for Summary Judgment**

After reviewing Plaintiff's initial complaint in accordance with 28 U.S.C. § 1915 and § 1915A, during which process Plaintiff filed an amended complaint, the Court determined that Plaintiff had asserted four actionable claims:

(1) A "legal mail claim" against Defendant Landry;

(2) A claim of wrongful seizure of mail against one or more Doe Defendant(s);

(3) A retaliation claim against Defendants Monahan and Harvey Bailey; and

(4) A claim for deprivation of the right of access to the courts against Defendants Verrier, Penny Bailey, Brown, and one or more Doe Defendant(s).[8]

(Order Granting Motion for Leave to Amend Complaint and Affirming In Part Recommended Decision of the Magistrate Judge, ECF No. 11, at 6.)

---

[8] The Court dismissed Plaintiff's due process claim because the claim challenged the revocation of accrued good time credits and, therefore, Plaintiff is required to pursue the claim first in a habeas petition. *Wilkinson v. Dotson*, 544 U.S. 74, 78, 82 (2005) (discussing the holding of *Edwards v. Balisok*, 520 U.S. 641, 646 (1997)).

Through their motion for summary judgment, Defendants argue that the record will not support Plaintiff's claim for deprivation of the right to access the courts (Motion at 6 – 8); that Defendants P. Bailey, Landry, and Brown are entitled to summary judgment on the legal mail claim because they did not direct or otherwise participate in the seizure of Plaintiff's legal mail (Motion at 8); that Defendants Monahan and H. Bailey are entitled to summary judgment on the retaliation claim because the record does not demonstrate retaliation by either defendant (Motion at 8 – 10); and that Plaintiff cannot recover compensatory damages for emotional distress on any remaining claim because he did not suffer physical injury (Motion at 10).

1. **Right of Access to the Courts**

Defendants argue the record will not support a claim for deprivation of Plaintiff's right to access the courts because there is no evidence that Plaintiff suffered harm to any underlying constitutional claim or any other cognizable claim. (Motion at 6 – 8.) In his amended complaint, Plaintiff asserted that his letter to the district attorney was his attempt "to convey incriminating information against an unindicted co-conspirator in the attempted murder, named Marc Miville," and that because Plaintiff was charged with trafficking based on the content of the correspondence, he was "prevented … from communicating fully and frankly with the district attorney regarding the attempted murder." (Am. Compl. ¶¶ 4, 7, ECF No. 9.)

In *Lewis v. Casey*, 518 U.S. 343 (1996), the Supreme Court, when considering an access to courts claim based on the alleged inadequacy of the prison law library and legal assistance services, held that a constitutional claim based on a prisoner's right to access the

courts requires a showing of actual injury to that right. *Id.* at 351. *See also Oliver v. Fauver*, 118 F.3d 175, 178 (3d Cir. 1997) (holding that prisoner suffered no actual injury based on alleged interference with his outgoing legal mail to the court, where his mail arrived at the court and the court adjudicated his claim). Citing *Lewis*, the First Circuit wrote:

> The right of access to the courts, in the context of prisoners, is addressed only to a prisoner's right to attack his conviction and his right to challenge the conditions of his confinement. "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."

*Riva v. Brasseur*, No. 15-2554, 2016 WL 9650983, at *1 (1st Cir. Sep. 12, 2016) (*quoting Lewis*, 518 U.S. at 355 (emphasis in original)).

Plaintiff's contention that he was deprived of a criminal prosecution of Mr. Miville does not constitute the harm necessary to sustain an access to courts claim. Plaintiff does not have a constitutional right to the institution of a criminal prosecution in a state or federal court, and thus Plaintiff's claim is not, ultimately, a claim about the denial of access to the courts. *United States v. Nixon*, 418 U.S. 683, 693 (1974) ("the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case"); *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (private citizens lack a judicially cognizable interest in the criminal prosecution of another); *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989); *Briand v. Lavigne*, 223 F. Supp. 2d 241, 251 (D. Me. 2002).[9]

---

[9] In *Nolan v. Scafati*, 430 F.2d 548 (1st Cir. 1970), the First Circuit held that a prisoner stated a claim where he alleged prison administrators diverted his outgoing legal mail to the Massachusetts Civil Liberties Union, effectively preventing him from seeking legal assistance. Unlike here, however, in *Nolan* the prisoner sought to assert a constitutional claim. *Id.* at 549. In *Muhammad v. Pitcher*, 35 F.3d 1081 (6th Cir. 1994), the Sixth Circuit held that a policy that denied "legal mail" status to correspondence with the state attorney general was unconstitutional because of the chilling effect it would have on inmates' access to justice

11

## 2. Legal mail and Defendants Penny Bailey, Brown, and Landry

The First Amendment protects a prisoner's ability to correspond on a broad range of topics, including the vindication of a prisoner's rights, and it protects legal mail from unlawful interception and censorship.[10] Defendants do not dispute the scope of the First Amendment's protections, but argue that the record will not support a claim against Defendants P. Bailey, Brown, and Landry.

---

through the attorney general's office. *Id.* at 1084. The Sixth Circuit described the policy as "a roadblock upon an otherwise legitimate avenue for the redress of an inmate's legal problems or grievances." *Id.* The court then considered whether the policy could be upheld under the *Turner v. Safley* framework. *Id.* at 1084 – 85. The significance of *Muhammad v. Pitcher* in relation to this case is that it reinforces that Plaintiff's mail claim exists independent of any denial of access claim. Thus, although the facts related to Plaintiff's legal mail do not support a denial of access claim, Plaintiff can proceed with an independent legal mail claim.

[10] "[A] prisoner's right to the free flow of incoming and outgoing mail is protected by the First Amendment." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003). However, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston*, 334 U.S. 266, 285 (1948). "The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives – including deterrence of crime, rehabilitation of prisoners, and institutional security." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). Courts have held that correspondence with attorneys general and prosecutors will often implicate the right of prisoners to access the courts or otherwise petition the government for redress of grievances, and have appropriately expressed concern that opening and reviewing the content of such mail could "chill" access to justice. *See Muhammad v. Pitcher*, 35 F.3d 1081, 1083 (6th Cir. 1994) (collecting cases). The First Circuit's assessment of claims arising out of the right to send mail has been governed by the Supreme Court's decision in *Procunier v. Martinez*, 416 U.S. 396, 412 – 13 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989). *See Stow v. Grimaldi*, 993 F.2d 1002 (1st Cir. 1993) (considering a policy calling for inspection/censorship of outgoing mail, but not involving outgoing legal mail). In *Martinez*, the Supreme Court held that outgoing prisoner mail may be censored if it furthers "an important or substantial governmental interest unrelated to the suppression of expression" and the burden imposed is "no greater than is necessary or essential to the protection of the particular governmental interest involved." 416 U.S. at 412 – 13. The Court explained in *Thornburgh* that the language in *Martinez* imposing a higher standard for censorship of outgoing mail was the product the Court's "recognition that the regulated activity centrally at issue in that case-outgoing personal correspondence from prisoners-did not, by its very nature, pose a serious threat to prison order and security." *Thornburgh*, 490 U.S. at 411. In other words, *Martinez* reflected that prison administrators generally do not have an institutional interest in the consequence of outgoing speech activity, and, therefore, censorship of outgoing communications is less likely to be sustained. *Id.* at 409 – 10. However, where an interest in internal prison administration is evident, prison regulation that burdens a constitutional right need only be "generally necessary" to a legitimate penological interest. *Id.* at 409 – 412 (reconciling *Martinez* with *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

To the extent Plaintiff asserts a § 1983 claim against an individual defendant, Plaintiff's allegations must support a finding that the individual, through his or her individual actions, violated Plaintiff's constitutional rights. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 – 77 (2009). In other words, each defendant is entitled to an individualized assessment as to whether Plaintiff has asserted an actionable claim against that defendant.[11]

Defendants Landry, Brown, and P. Bailey assert by affidavit that they were not involved in the interception of Plaintiff's mail. They maintain they were unaware of Defendant Verrier's action until after it occurred. (*Id.* ¶ 13.) Plaintiff contends, however, that each defendant "was contemporaneously aware of, and was materially involved in the seizure, opening, reading, and dissemination of [his] privileged communication to DA Anderson." (PSDF ¶¶ 13 – 15.) In support of his statement, Plaintiff cites the same affidavits as Defendants. In his summary judgment affidavit, Plaintiff states that Captain Shawn Welch informed him at his disciplinary proceeding that "everybody from Penny [Bailey] and Harvey [Bailey] to Luke [Monahan] and Deputy Warden Brown have [sic] weighed in on your write-up." (Schoff Aff. ¶ 12.)

  a. *Defendant Penny Bailey*

Defendant Penny Bailey asserts she "had no knowledge of or involvement in the interception of the letter." (Affidavit of Penny Bailey ¶ 3, ECF No. 28-7.) While Plaintiff attempts to generate a disputed factual issue through his assertion that Captain Welch told

---

[11] Although Defendants P. Bailey and Brown were not identified during the screening process as defendants who were necessarily implicated in the legal mail claim, and although Defendant Landry was not identified as a defendant on the wrongful seizure claim, because the pleadings of pro se litigants receive a liberal construction in federal court, and because the Rules allow for amendment of pleadings and joinder of claims that are in the interest of justice, Fed. R. Civ. P. 1, 15(b), it is appropriate to interpret the pleadings as asserting a legal mail claim against the defendants.

him that Defendant P. Bailey was aware of the letter and its significance to the drug trafficking disciplinary charge, even if the statement of Captain Welch were considered admissible evidence in accordance with Rule 56(c)(4), Defendant's mere knowledge of the letter's existence would not support a claim against her. The record lacks any evidence to suggest that Defendant P. Bailey was involved in the confiscation or retention of Plaintiff's legal mail. Defendant P. Bailey, therefore, is entitled to summary judgment on the legal mail claim.

### b. Defendant Glean Brown

Defendant Brown asserts he was not aware of and did not authorize the interception of the "letter," and learned of the interception "after the fact." (Affidavit of Scott Landry ¶ 6, ECF No. 28-4; Affidavit of Glean Brown ¶ 6, ECF No. 28-5.) Defendant Brown's potential liability, however, is not limited to his direct involvement in the interception or retention of the mail. Under the federal civil rights act, 42 U.S.C. § 1983, a supervisory official may be legally responsible for the conduct of a subordinate if the conduct of the subordinate results in a constitutional violation and the supervisory official's action or inaction was affirmatively linked to the conduct. *Estate of Bennett v. Wainwright*, 548 F.3d 155, 176 – 77 (1st Cir. 2008). An affirmative link can be shown through supervisory encouragement, condonation or acquiescence, or by gross negligence amounting to deliberate indifference. *Id.* The applicable standard "contemplates proof that the supervisor's conduct led inexorably to the constitutional violation." *Pineda v. Toomey*, 533 F.3d 50, 54 (1st Cir. 2008) (quoting *Hegarty v. Somerset Cnty.*, 53 F.3d 1367, 1380 (1st Cir. 1995)).

Although the summary judgment record establishes that Defendant Brown did not authorize the interception of the correspondence in advance, given his participation in the February 19, 2016, conference with Defendant Verrier, and given his status as the Deputy Warden of MCC, the record generates a question as to whether Defendant Brown, in his supervisory capacity, condoned the interception of Plaintiff's mail. Defendant Brown is thus not entitled to summary judgment.

### c. *Defendant Landry*

Defendant Landry asserts he was not aware of and did not authorize the interception of the "letter," and learned of the interception "after the fact." (Affidavit of Scott Landry ¶ 6, ECF No. 28-4; Affidavit of Glean Brown ¶ 6, ECF No. 28-5.) The record also lacks any evidence that connects Defendant Landry to the interception and retention of Plaintiff's correspondence, either as a direct participant or as a supervisor who condoned the interception and retention. Defendant Landry, therefore, is entitled to summary judgment.

### 3. **Retaliation**

To establish a claim of First Amendment retaliation, an inmate must allege (1) that the inmate engaged in conduct that is protected by the First Amendment; (2) that a defendant took adverse action against the inmate because of the inmate's protected conduct; and (3) that the adverse action would deter an inmate of ordinary firmness from exercising his or her First Amendment rights. *Hannon v. Beard*, 645 F.3d 45, 48 (1st Cir. 2011); *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003); *Thaddeus–X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999).

Plaintiff contends that he was charged with a drug trafficking violation by Defendants in retaliation for the content of his communication with the district attorney and earlier First Amendment activity. (Schoff Aff. ¶¶ 5 – 6.) In support of his claim, Plaintiff asserts that Defendant P. Bailey has a history of improperly placing him in the punitive level system when he was experiencing mental health difficulties. (*Id.* ¶ 7.) Plaintiff also argues that his letter to the district attorney did not support the disciplinary charge, and the fact he was the only person charged with drug trafficking constitutes evidence of a retaliatory bias. (*Id.* ¶ 9.) Defendants contend they are entitled to summary judgment because the record would not support a finding that they instituted the drug trafficking disciplinary charge for retaliatory purposes. (Motion at 9 – 10.)

First, given the information Plaintiff included in the letter, Plaintiff's argument that the charge was retaliatory because the charge was baseless is not persuasive. Plaintiff's letter can fairly be characterized as an admission to participating in drug trafficking activity. Although the letter can be deemed an admission by Plaintiff, it is not conclusive evidence of Mr. Miville's involvement. The mere fact that Mr. Miville was not charged is thus insufficient to establish retaliation. The record establishes a legitimate basis for the disciplinary charge against Plaintiff, and lacks sufficient evidence to support a retaliation claim. Defendants, therefore, are entitled to summary judgment.

4. **Compensatory damages**

Plaintiff requests compensatory damages "for the irreparable injury [he] suffered as a result of the First Amendment violations." (Compl. at 16, ¶ C.1, C.6.) Citing 42 U.S.C.

§ 1997e(e), Defendants argue Plaintiff cannot recover compensatory damages based on an emotional injury. (Motion at 10.)

Under the Prison Litigation Reform Act, Congress has limited the relief available to prisoners in civil actions. Specifically: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C.A. § 1997e(e).

Whether § 1997e(e) precludes an award of compensatory damages on a claim for deprivation of a First Amendment right or any other constitutional right has not been directly decided by the First Circuit. *Williams v. Cutler*, No. 1:14-cv-00539-NT, 2016 WL 1314630, at *7 (D. Me. Mar. 11, 2016). However, persuasive authority suggests that Plaintiff cannot recover monetary relief based on Plaintiff's mental or emotional distress. *Mattei v. Dunbar*, 217 F. Supp. 3d 367, 380 (D. Mass. 2016) (collecting opinions from the Second, Third, Fifth, Seventh, Eighth, Tenth, and D.C. Circuits).

Nevertheless, Plaintiff could conceivably recover compensatory damages for actual injury. *See*, *e.g.*, *Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017); *King v. Zamiara*, 788 F.3d 207, 212 (6th Cir. 2015) (collecting cases); *Shaheed-Muhammad v. Dipaolo*, 138 F. Supp. 2d 99, 107 (D. Mass. 2001) (Gertner, J.). For example, in *King*, the Sixth Circuit noted that courts have permitted a prisoner to "recover presumed damages for actual injuries caused by constitutional violations that are likely to have occurred but difficult to measure, even when the injury claimed is neither physical harm nor mental or emotional distress." 788 F.3d at 214 (internal quotation marks omitted). Defendants have not

addressed whether Plaintiff's claim involves an "actual" injury under such an analysis. *See id.* (discussing the need for a showing of "specific compensable, non-abstract harm" (quoting *City of Watseka v. Illinois Public Action Council*, 796 F.2d 1547 (7th Cir.1986), *aff'd*, 479 U.S. 1048 (1987))).[12]

This Court has on other occasions reserved judgment on the question whether § 1997e(e) applies to constitutional claims, where the procedural posture of the case permitted the Court to address the matter at a later time. *See Ayotte v. Barnhart*, 973 F. Supp. 2d 70, 83 (D. Me. 2013); *Williams v. Cutler*, No. 1:14-cv-00539-NT, 2016 WL 1314630, at *7 (D. Me. Mar. 11, 2016). A similar approach is appropriate in this case.

## CONCLUSION

Based on the foregoing analysis, I deny Plaintiff's Motion to Strike (ECF No. 42) and Plaintiff's Request for Rule 56(d) Relief (ECF No. 39). Additionally, I recommend the Court grant in part Defendants' Motion for Summary Judgment (ECF No. 26). Specifically, I recommend the Court:

> (1) grant summary judgment to all Defendants on Plaintiff's claim of denial of access to the courts;
>
> (2) grant summary judgment to Defendants Penny Bailey and Scott Landry on Plaintiff's legal mail claim, but deny the motion as to Defendant Glean Brown;
>
> (3) grant summary judgment on Plaintiff's retaliation claim; and
>
> (4) preclude any award of compensatory damages for emotional distress, but reserve judgment on whether Plaintiff may be able to establish an actual

---

[12] Because the law in this Circuit does not foreclose the award of nominal and punitive damages on a constitutional claim that does not involve physical injury, and because Plaintiff also requests declaratory relief, Plaintiff's legal mail claim remains viable even if the Court concludes that Plaintiff cannot recover any form of compensatory damages. *Kuperman*, 645 F.3d at 69 n.5; *Williams*, 2016 WL 1314630, at *7.

injury to a constitutional right that would otherwise support Plaintiff's request for compensatory damages.

If the Court accepts the recommendation, the remaining claims would be Plaintiff's First Amendment legal mail claim and Fourth Amendment unreasonable seizure claim,[13] on which claims Plaintiff would proceed against Defendants Verrier and Brown.[14]

## NOTICE

Any objection to this Recommended Decision and Order shall be filed in accordance with Fed. R. Civ. P. 72.

With respect to the order on non-dispositive matters, a party may serve and file objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(a).

With respect to the recommendations made herein, a party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. Section 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection. Fed. R. Civ. P. 72(b)(2). Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 7th day of March, 2018.

---

[13] In its Order Granting Motion for Leave to Amend Complaint and Affirming In Part Recommended Decision of the Magistrate Judge, the Court concluded that proof of a legal mail violation under *Martinez* might also demonstrate that the seizure of Plaintiff's outgoing mail was unreasonable for purposes of the Fourth Amendment. (ECF No. 11 at 3.)

[14] During the screening process, the Court interpreted the legal mail claim as a claim against Defendant Landry and the unreasonable seizure claim to be a claim against Doe Defendants. As a consequence of the summary judgment review, both claims should proceed against Defendants Verrier and Brown, based on their involvement in the interception and/or retention of Plaintiff's correspondence.